## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN LAZAR,** | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **15-3648** |
| | : | |
| **FEDERAL BUREAU OF** | : | |
| **INVESTIGATION,** | : | |
| **Defendant** | : | |

## <u>MEMORANDUM OPINION</u>

**Rufe, J.**                                                               **September 13, 2016**

Plaintiff Steven Lazar, an inmate and convicted murderer, alleges in this lawsuit that the

Federal Bureau of Investigation ("FBI") improperly denied his request for information under the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Lazar had requested documents that he

argues relate to other suspects in the crime of which he was convicted.  Now before the Court are

the parties' cross-motions for summary judgment.

## I.      FACTUAL AND PROCEDURAL HISTORY

In 2010, a jury in the Philadelphia Court of Common Pleas convicted Lazar of second

degree murder, robbery, and possession of an instrument of crime arising from the killing of

Dario Gutierrez in 2007.[1]  Lazar was sentenced to life in prison. The Superior Court affirmed his

conviction on appeal.  Lazar then filed a petition for post-conviction relief in state court, which

was denied after an evidentiary hearing.  This denial was also affirmed on appeal.  On December

---

[1] The following evidence was presented at trial, in relevant part.  Three months after the murder, the victim's daughter, while cleaning out the home, found a bag belonging to Lazar on the rear porch.  The bag contained various items implicating Lazar.  Additionally, Lazar made statements to five people, including his neighbors, that he had killed someone.  Finally, after initially implicating a man named John in the murder, Lazar admitted to police that he had been with John at the time of the murder and subsequent robbery. *Commw. v. Lazar*, No. 2191 EDA 2013 (Pa. Super. Ct. 2014).

14, 2015, Lazar filed a petition for writ of habeas corpus, which is currently pending before another court in this District.[2]

On January 27, 2015, Lazar requested pursuant to the FOIA records relating to murder victim Dario Gutierrez, as well as records relating to Victor Berrios and William Rosa, two men Lazar contends are responsible for Gutierrez's killing.  Specifically, Lazar sought "any and all" of the following: (1) memoranda or reports prepared by the FBI or state law enforcement concerning murder suspects Victor Berrios and William Rosa; (2) information regarding the arrest of Berrios and Rosa; (3) statements made by Berrios and Rosa to state or federal law enforcement; (4) reports of discussions between state and federal law enforcement regarding the murder of Gutierrez; (5) reports prepared in regard to the federal indictment of Berrios and Rosa; (6) information pertaining to Berrios or Rosa as confidential informants for state and federal law enforcement; (7) federal and state criminal records for Berrios and Rosa.[3]  On February 23, 2015, David Hardy informed Lazar that the FBI could not identify any records pertaining to Gutierrez.[4]  Lazar did not appeal this determination.

Regarding Berrios and Rosa, the FBI informed Lazar that he needed to provide justification for his request.  According to the FBI, if such documents existed, they could be exempt from disclosure under FOIA exemptions (b)(6) and (b)(7)(C).[5]  Under these exemptions, where a request is made for information about a third party and the FBI recognizes an important privacy interest in that information, the requestor must provide either authorization from the third party, proof of death of the third party, or justification that the public interest in disclosure

---

[2] *See Lazar v. Coleman*, No. 14-6907 (E.D. Pa. 2014).

[3] Ex. A to Hardy Decl.

[4] Ex. B to Hardy Decl. David Hardy is the Section Chief of the Record/Information Dissemination Section of the Records Management Division of the FBI.  Hardy Decl., ¶ 1.

[5] Exs. D, J to Def. Mot. for Summary Judgment.

outweighs the third party's privacy interest.[6]  Without this information, the FBI would neither confirm nor deny the existence of records relating to the two men.[7]

By letter dated March 12, 2015, Lazar responded to the FBI and asserted that the public interest in disclosure of records relating to Berrios and Rosa outweighed any privacy interests that the two men may have.[8]  He did not provide authorization or proof of death. The FBI rejected Lazar's argument and denied his request on March 30, 2015.[9]  Lazar unsuccessfully appealed the FBI's determination.[10]  This lawsuit followed.

On June 29, 2015, Lazar filed a *pro se* Complaint against the FBI.  On August 7, Lazar filed a Motion to Amend the Complaint, which the Court granted.  The Amended Complaint requests that the Court compel disclosure of the information sought regarding Gutierrez, Berrios, and Rosa.  After an opportunity for discovery, Lazar filed a Motion for Summary Judgment and the FBI filed a Motion for Partial Summary Judgment and to Dismiss for Lack of Subject Matter Jurisdiction. Briefing is complete.[11]

---

[6] 5 U.S.C. § 552(b)(7)(C) (2016); Hardy Decl., ¶ 25.

[7] This is known as a "Glomar response."  The term has its origin in a case involving a FOIA request for records relating to a research ship called the "Glomar Explorer."  *Phillippi v. Cent. Intelligence Agency*, 546 F.2d 1009 (D.C. Cir. 1976).

[8] Ex. E to Hardy Decl., at 2.

[9] Ex. F to Hardy Decl.

[10] Exs. G, H to Hardy Decl.

[11] In his Response, Lazar protests the attachment of Exhibits A through D to the FBI's Motion.  He primarily objects to the FBI's attachment of the Declaration of David Hardy as Exhibit A, asserting that while the FBI sent him most of the documents attached to its Motion for Summary Judgment prior to filing its Motion, Lazar lacked notice of the affidavit before filing his own Motion for Summary Judgment.  Lazar cites to this Court's Order of November 30, 2015, which stated in relevant part: "Any documents Defendant intends to submit with its motion for summary judgment shall be provided to Plaintiff by January 11, 2016."  [Doc. No. 18.]

The FBI's conduct was not improper.  The Court's Order was in reference to the exchange of discovery in this case; it did not concern documents such as affidavits which are regularly attached to a motion for summary judgment.  Additionally, Lazar had an opportunity to address the affidavit in his Response.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate if "the materials in the record" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[13] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[14] In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[15] Further, a court may not weigh the evidence or make credibility determinations.[16] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[17] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[18] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[19] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact,

---

[12] Fed. R. Civ. P. 56(a), (c)(1).

[13] *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[14] *Id.*

[15] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[16] *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[18] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[19] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976)).

summary judgment is appropriate.[20]

A district court reviews the denial of a FOIA request *de novo*.[21]  Under the FOIA, the agency bears the burden of showing that the requested documents are exempt from disclosure.[22] A government agency typically submits affidavits to justify its nondisclosure of requested documents, and the affidavits "must be detailed, nonconclusory, and submitted in good faith."[23] In a FOIA action, summary judgment is proper when the Government's affidavits "describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."[24] "Without evidence of bad faith, the veracity of the government's submissions regarding reasons for withholding the documents should not be questioned."[25]  Government affidavits generally are "accorded a presumption of good faith which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."[26]  The Court may award summary judgment "on the basis of agency affidavits alone where the affidavits are sufficiently detailed and in good faith."[27]

---

[20] *Celotex*, 477 U.S. at 322; *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[21] *Lame v. U.S. Dep't of Justice*, 654 F.2d 917, 921 (3d Cir. 1981).

[22] 5 U.S.C. § 552(a)(4)(B).

[23] *Amro v. U.S. Customs Serv.*, 128 F. Supp. 2d 776, 782 (E.D. Pa. 2001).

[24] *Id.* (quoting *Am. Friends Serv. Comm. v. Dep't of Defense,* 831 F.2d 441, 444 (3d Cir. 1987)).

[25] *Manna v. U.S. Dep't of Justice*, 815 F. Supp. 798, 817 (D.N.J. 1993), *aff'd*, 51 F.3d 1158 (3d Cir. 1995) (quoting *Matter of Wade*, 969 F.2d 241, 246 (7th Cir. 1992)).

[26] *Venkataram v. Office of Info. Policy*, No. 09-6520, 2013 WL 3871730, at *3 (D.N.J. July 25, 2013) (quoting *Negley v. Fed. Bureau of Investigation*, 169 F. App'x 591, 594 (D.C. Cir. 2006)).

[27] *Berger v. I.R.S.*, 487 F. Supp. 2d 482, 493 (D.N.J. 2007), *aff'd*, 288 F. App'x 829 (3d Cir. 2008)

### III.     DISCUSSION

Lazar asserts in his Motion for Summary Judgment that he is entitled to judgment as a matter of law on his claim that the FBI wrongfully denied his request for information under the FOIA.  The FBI's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Partial Summary Judgment asserts that Lazar has failed to exhaust administrative remedies regarding part of his claim and that the FBI was correct to deny Lazar's request as to the remainder of his claim.

#### A.     Subject Matter Jurisdiction

The FBI submits that the Court lacks jurisdiction over Lazar's FOIA claim inasmuch as it relates to Gutierrez, because Lazar failed to exhaust administrative remedies at the agency level. According to the FBI, because Lazar failed to appeal the FBI's determination that there were no records relating to Gutierrez, he cannot now seek relief in this Court.[28]  A requestor of FOIA information must exhaust administrative remedies before filing suit in federal court.[29]  Therefore, a claim under the FOIA is "subject to dismissal for lack of subject matter jurisdiction" if the plaintiff has not timely exhausted administrative remedies, that is, if he has failed to "appeal an adverse determination to the head of the agency before filing suit in federal court."[30]

Lazar did not appeal the FBI's conclusion that there were no records responsive to his request concerning Gutierrez.[31]  He does not appear to dispute this fact, and his Motion for Summary Judgment focuses almost exclusively on his request for information relating to Berrios rather than on information relating to Gutierrez.  Because the Court is convinced that it lacks

---

[28] Def. Mot. for Summary Judgment at 3; Hardy Decl., ¶¶ 9, 28.

[29] *McDonnell v. U.S.*, 4 F.3d 1227, 1236 (3d Cir. 1993).

[30] *Id.*

[31] Hardy Decl. ¶¶ 9, 28.

subject matter jurisdiction over this part of Lazar's claim, his claim will be dismissed as it relates to his request for information concerning Gutierrez.[32]

### B.    FOIA Exemptions 6 and 7(C)

The purpose of the FOIA is to "facilitate public access to Government documents."[33] Under the FOIA, federal agencies must disclose records in their possession upon request, unless the requested records are protected by one of nine exemptions.[34]  The exemptions at issue in this case are 7(C) and 6.  Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  Exemption 6 precludes disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."[35]  Because the analysis required for Exemptions 6 and 7(C) is sufficiently similar to warrant a single discussion, the Court need not consider Exemptions 6 and 7(C) separately.[36]

According to the FBI, its "longstanding policy has been to provide an Exemption 6 and 7(C) Glomar response, neither confirming nor denying the existence of records in those instances where an individual seeks access to information regarding a third party but fails to provide a

---

[32] See *Arden v. U.S.*, No. 13-3657, 2014 WL 2924960, at *1 (E.D. Pa. June 27, 2014) (granting motion to dismiss for lack of subject matter jurisdiction in FOIA case because plaintiff failed to exhaust administrative remedies).

[33] *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).

[34] *Lame*, 654 F.2d at 921.

[35] 5 U.S.C. § 552.

[36] *See Seized Prop. Recovery, Corp. v. U.S. Customs & Border Prot.*, 502 F. Supp. 2d 50, 56 (D.D.C. 2007) (stating that Exemption 7(C) is "the law enforcement counterpart" to Exemption 6); *see also Pusa v. Fed. Bureau of Investigation*, No. 13-4658, 2015 WL 10939781, at *8 (C.D. Cal. Mar. 30, 2015) ("These exemptions are typically considered together because the nature of the personal privacy interest at stake in Exemption 7(C) parallels that in Exemption 6") (internal quotation omitted).

Privacy Waiver from the third party, or proof of death of that third party[, or] a showing of significant public interest in the disclosure of the materials sought."[37]  The FBI's Glomar response was appropriate here, and Lazar does not dispute that it was.[38]

To justify his request to the FBI, Lazar maintains that public interest in disclosure outweighs any privacy interest.  First, regarding the privacy interests in this case, Lazar argues that Berrios and Rosa have no privacy interest because "the right to privacy does not extend to criminal records."[39]  He supports this argument with reference to Berrios's criminal history, including a plea of guilty in federal court for possession of a firearm by a felon.

Yet, Lazar claims, even if the two men have privacy interests, the public "not only has an interest in knowing whether Plaintiff has been incarcerated rightfully or wrongfully, but also whether their tax dollars are being used to incarcerated [sic] someone who has committed no crime."[40]  Lazar also alleges government misconduct in the handling of his case, stating that the public has a strong interest in "knowing what their government is up to" and in ensuring Lazar was afforded a fair trial.[41]

---

[37] Hardy Decl. at 9-10 (citing 28 C.F.R. § 16.3(a)).

[38] Where a FOIA request seeks documents pertaining to investigations of individuals named in the request, courts often find a Glomar response appropriate.  *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 7 (D.C. Cir. 2011); *see also Lewis v. U.S. Dep't of Justice*, 733 F. Supp. 2d 97, 112 (D.D.C. 2010) ("If an individual is the target of a FOIA request, the agency to which the FOIA request is submitted may provide a 'Glomar' response, that is, the agency may refuse to confirm or deny the existence of records or information responsive to the FOIA request on the ground that even acknowledging the existence of responsive records constitutes an unwarranted invasion of the targeted individual's personal privacy.").

[39] Pl. Mot. for Summary Judgment, at 20.

[40] Pl. Mot. for Summary Judgment, at 2.  This is essentially the same argument Lazar made in his request to the FBI.  *See* Ex. E to Hardy Decl., at 8-9 ("The Public has a right to know, not only what their government is up to, but they also have an interest in their own safety as Rosa might still be roaming the streets" and "an interest in knowing their tax dollars are not . . . paying to keep Steven Lazar in prison for a crime he has nothing to do with.").

[41] Pl. Mot. for Summary Judgment, at 24.

8

A person alleging a public interest in exposing government misconduct must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."[42]  Lazar references various documents attached to his Motion for Summary Judgment to substantiate his argument that the public interest outweighs any private interest and that government misconduct occurred.  Lazar first cites a news article suggesting that the victim had been targeted by local drug dealers who resented his involvement in a neighborhood anti-drug watch.[43]  Next, he points to a non-precedential Third Circuit opinion affirming the sentence imposed upon Berrios following a guilty plea for being a felon in possession of a firearm.[44]  Lazar also provides a weather report for the months of January and February 2007 to show that it would have been impossible for his bag to have been found in good condition, as it apparently was, since it was on the back porch of the house during the coldest winter months.[45]

Additionally, Lazar claims that his confession was brought about by severe symptoms of methadone withdrawal, and offers records of his treatment to show that over 50 hours had passed since his last methadone treatment when he made inculpatory statements to the police.[46]  He also provides photographs of the crime scene to suggest that empty gun holsters pictured next to the

---

[42] *Frankenberry v. Fed. Bureau of Investigation*, 567 F. App'x 120, 123 (3d Cir. 2014) (quoting *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157 (2004)).

[43] Ex. A to Pl. Mot. for Summary Judgment.

[44] Ex. C to Pl. Mot. for Summary Judgment; *U.S. v. Berrios*, 354 F. App'x 629, 629 (3d Cir. 2009).

[45] Ex. D to Pl. Mot. for Summary Judgment.

[46] Exs. F, G to Pl. Mot. for Summary Judgment.

9

victim's body could have belonged to Berrios, and that the murderer must have entered through the front because the back door was locked.[47]

Finally, Lazar offers what appears to be a police report which references an anonymous tip implicating Berrios and Rosa in the Gutierrez murder.  The January 18, 2007 police report stated that on January 11, 2007, about four days after the murder, an anonymous informant told a police sergeant that two men known as "Vic" and "Will," along with a third man, went to Gutierrez's home and gained entry through the front door.  The two men, later identified as Victor Berrios and William Rosa, were at that time the subject of a federal investigation unrelated to the Gutierrez murder.  Pursuant to an indictment in the unrelated investigation, homicide detectives secured a search warrant and searched Berrios's residence. The report continued, in relevant part:

> Found on the living room floor was a machete with a red stain on the blade.  The handle had been covered with a plastic Philadelphia Police evidence bag, which was placed there by Federal Agents.  Also found in the living room under a recliner/rocker type chair was a pair of Timberland boots that had a small red stain on the tips. In the basement area, . . . there was a pair of Timberland boots there that appeared to be stained with blood spatter on the toe areas of both boots. These items, along with proof of residency were confiscated and submitted to the Police Department's Criminalistics laboratory for further analysis. . . . The investigation is continuing . . .[48]

Lazar argues that this police report, along with the other documents he attached to his Motion, show that the public interest in this case far outweighs any privacy interest that may exist.  Lazar asserts that the public has "a strong interest in knowing what their government is up

---

[47] Exs. E, H to Pl. Mot. for Summary Judgment.

[48] Ex. B to Pl. Mot. for Summary Judgment.

to," and that it is vital that the public be able to root out corruption and "hold the governors accountable to the govern[ed]."[49]

Lazar's arguments are unpersuasive.  First, regarding the privacy interests of Berrios and Rosa, it is undisputed that private citizens have a significant interest in the privacy of their personal records.[50]  Furthermore, "[i]ndividuals involved in a criminal investigation possess a privacy interest in not having their names revealed in connection with disclosure of the fact and subject matter of the investigation."[51]  Additionally, the fact that a person has a criminal record does not diminish his privacy interest.[52]

With regard to public interest, as the FBI notes, the Supreme Court has held that the only relevant "public interest in disclosure" to be weighed in the 6 and 7(C) balance is "the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the operations or activities of the government.'"[53]  Lazar has not produced evidence that would "warrant a belief by a reasonable person that the alleged

---

[49] Pl. Mot. for Summary Judgment, at 22.  Lazar cites *Hale v. U.S. Dep't of Justice*, 973 F.2d 894, 901 (10th Cir. 1992), to argue that the public interest asserted by a requestor "must relate to the disclosure of governmental activity rather than the disclosure of information on private conduct that happens to be located in governmental files."  *Hale* is distinguishable because it focuses specifically on Exemption 7(D), which permits nondisclosure where disclosure may disclose the identity of a confidential source.  More importantly, the Supreme Court has since vacated the judgment.  *See Hale v. U.S. Dep't of Justice*, 509 U.S. 918 (1993).

[50] *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 765 (1989) ("disclosure of records regarding private citizens, identifiable by name, is not what the framers of the FOIA had in mind." ).

[51] *Frankenberry*, 567 F. App'x at 122 (internal quotation omitted); *see also Am. Civil Liberties Union*, 655 F.3d at 7 (privacy interests of a convicted defendant "are plainly substantially weaker than the privacy interests of individuals who have been investigated but never publicly charged" for the crime); *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995) (a person who at one time was the subject of a criminal investigation has an "obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation.").

[52] *Reporters Comm. For Freedom of Press*, 489 U.S. at 779.

[53] *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (quoting *Reporters Comm. For Freedom of Press*, 489 U.S. at 775).

Government impropriety might have occurred."[54]  As to Lazar's contention that the public interest is served by ensuring the fairness of his trial and showing the public "what their government is up to," courts have held that these reasons alone are not the sorts of public interests that compel disclosure under the FOIA.[55]

While it is notable that Berrios and Rosa were initially subjects of the murder investigation, the Philadelphia police report referencing Berrios and Rosa and Berrios's unrelated criminal history does not warrant disclosure of any FBI files on the subjects.  The police report itself stated that the two men were the subjects of a federal investigation unrelated to the murder.  Therefore, as the FBI observes, it is unlikely based on the Philadelphia police report that FBI documents exist relating to the Gutierrez murder; it is much more likely that any documents, if they exist, would concern unrelated federal investigations.  The weather report, crime scene photographs, and methadone clinic records are not enough to transform Lazar's theory of government misconduct into something beyond mere speculation.[56]

Balancing the privacy interests of Berrios and Rosa against the public interest in disclosure of the documents sought by Lazar, the Court is persuaded that the FBI was justified in refusing to disclose the existence of documents related to Berrios and Rosa.  The Hardy

---

[54] *Frankenberry*, 567 F. App'x at 123 (quoting *Favish,* 541 U.S. at 174).

[55] *See Manchester v. Drug Enf't Admin., U.S. Dep't of Justice*, 823 F. Supp. 1259, 1271 (E.D. Pa. 1993), *aff'd sub nom. Manchester v. Drug Enf't Admin. of U.S. Dep't of Justice*, 40 F.3d 1240 (3d Cir. 1994) (following other circuits in holding, "the public interest in the fairness of a particular trial is not the kind of public interest that compels disclosure under (b)(7)(C)"); *see also Wolk v. U.S.*, No. 04-832, 2005 WL 465382, at *7 (E.D. Pa. Feb. 28, 2005) ("A mere desire to review how an agency is doing its job, coupled with allegations that it is not, does not create a public interest sufficient to override the privacy interests protected by Exemption 7(C)." (quoting *McCutchen v. U.S. Dep't of Health & Human Servs.,* 30 F.3d 183, 188 (D.C. Cir. 1994)).

[56] *See Ray*, 502 U.S. at 179 ("Mere speculation about hypothetical public benefits cannot outweigh a demonstrably significant invasion of privacy."); *see also Venkataram*, 2013 WL 3871730, at *12 ("To the extent Plaintiff justifies disclosure by suggesting government officials acted improperly, the public interest here is insubstantial, because Plaintiff has not put forward any compelling evidence that the Department of Justice was engaged in illegal activity when it decided not to prosecute [his former co-defendant].")

Declaration is sufficiently detailed and was submitted in good faith.[57]  Based upon the documents provided by Lazar, as well as the Hardy Declaration, disclosure of documents relating to Berrios and Rosa "would constitute a clearly unwarranted invasion of personal privacy."[58]

Accordingly, summary judgment will be granted in favor of the FBI with regard to the remaining documents sought by Lazar.

## IV.   CONCLUSION

For the reasons stated above, the Court will grant Defendant FBI's Motion to Dismiss and for Partial Summary Judgment and dismiss Plaintiff Steven Lazar's claim. The Court will deny Lazar's Motion for Summary Judgment.  These rulings are based solely on the law governing this case, and the Court makes no findings regarding Lazar's habeas petition which is pending before another court in this District.  An appropriate Order will follow.

---

[57] *See Berger v. I.R.S.*, 487 F. Supp. 2d at 493 (summary judgment based on an affidavit is proper if the affidavit is "sufficiently detailed and in good faith").

[58] 5 U.S.C. § 552.